## MARY BETSON v. ADAM TURNBALL.

Court of Chancery. August 28, 1817.

*Ridgely's Notebook I, 167.*

*Rogers* and *Booth* for complainant. *McLane* for defendant.

Peter Stidham, father of complainant, made will March 3, 1777, died in March or April, 1777. Sarah, executrix, William

and Lucas, his sons, executors. April 25, 1777, will proved and letters testamentary granted to said executrix and executors.

Testator bequeathed to his two daughters £600 out of my real estate thus: "Item I give and bequeath to my two daughters £600 out of my real estate in manner and form following, to wit, the land I give them to be deducted out of the said £600, at the rate of £8 per acre, and the residue of the £600 to be paid in manner following, to wit, my son William shall pay one half of his part two years after my decease and the interest yearly and every year to my said daughters, and two years after he shall pay the other half, him his heirs, executors administrators unto them their heirs or assigns; also Lucas shall pay unto my two daughters one half of his part of said residue four years after my decease, and two years after he shall pay the other half, together with the interest yearly and every year, him his heirs, executors, administrators unto them, their heirs or assigns. Also my son Peter shall pay unto my said daughters four years after he comes to the age of twenty-one years half of his part of the residue of the £600 with the interest yearly and every year, and two years after he shall pay the remaining half him, his heirs executors administrators unto them their heirs or assigns" etc.

Real estate of testator was divided between his sons William, Peter, and Lucas. Lucas held his part until January 1803, when he died, Sarah and William Stidham, his administrators. The personal property became expended. August 13, 1803, administrators of Lucas sold his land to William Tussy subject to legacy payable to William Tussy sold the land to John Bird, and covenanted to indemnify Bird from testator's will. Judgments against Bird. Land sold by executors to James Brian and John Wardle. They sold Adam Turnball, and covenanted against incumbrances. No part of her legacy has been paid. Subject to deduction of £6.6.8, the amount of her share of 4¾ acres of land devised to her.

Prayer of bill, that Turnball may come to account, and pay the legacy with interest.

Answer of Adam Turnball. Admits will of Peter Stidham. Legacy paid by Lucas. Twenty-six years between death of testator and said Lucas; and twenty years from time legacy was all due to death of Lucas. Complainant was very poor. Lucas in good circumstances. She married Jacob Cannon. In 1789 Cannon gave an order on said Lucas for the full amount of his wife's share in favor of Peter Stidham of her father's estate which might be due on settlement of estate. Order acceptance by Lucas. And after death of Peter Stidham was delivered by his ad-

ministrators to complainant. Jacob Cannon died. Left her and a family of small children, all needy. Administration granted to Sarah Stidham and William Stidham.

*Mr. Booth* reads depositions of witnesses for complainant:

Alexander Harvey, fifty-five years. Heard Lucas Stidham say the legacy was unpaid.

Archibald Alexander, sixty years.

James Eves, fifty-eight years. Heard Lucas say his legacy was due, and also Peter's. But Peter said he had paid.

. . . .

*Booth.* Order for sale of real estate of Lucas Stidham, March 1, 1803, on petition of Sarah Stidham and William Stidham, administrators of Lucas Stidham. This order states the land to be subject to a legacy to his sisters. The conditions of sale make the land subject to this legacy and to Mrs. Summeril's legacy. Tussy, the purchaser under the administrators, signs condition of sale, dated August 13, 1803, acknowledging the land to be subject to these legacies. November 5, 1810, conditions of sale when this property was sold as property of John Bird, by the marshal of Delaware District, on a writ of execution sued out of the Circuit Court of the Delaware District. The conditions make the land subject, among other things, to the legacies payable to Mary Betson, and wife of Joseph Summeril. November 14, 1810, James Bryan acknowledged that he purchased said land subject to the preceding conditions of sale. He purchased for $6000. . . . . April 18, 1789, order of Jacob Cannon former husband of Mary Betson on Lucas Stidham to pay whatever sum of money is due to him from the settlement of the estate of his father-in-law to Peter Stidham, whose receipt should be a discharge.

NOTE. Alexander Harvey, in his deposition, says he saw Peter Stidham write this order and sign Jacob Cannon's name to it; and that it is all in the handwriting of Peter Stidham, except the acceptance, thus: "Accepted Lucas Stidham" which he says is in the handwriting of Lucas.

Mary Betson proves the books of account of her deceased husband, John Betson, on whose estate she administered; and also her own books. She married Betson in 1795. Her account when widow of Jacob Cannon, and John Betson's account against Lucas Stidham; hers beginning December 22, 1792, and Betson's beginning November 1795, and Betson's ending January 3, 1803, amount to £92.12.3½. Betson and Stidham died about same time. This is read to show that Lucas Stidham was generally indebted to her, and not likely to have paid the legacy.

Will of Peter Stidham, father of Mary Betson, who bequeathed the legacy dated March 3, 1777.

Deed, Wardle and Bryan to Turnball. Consideration $8000, or $8050.

*McLane* reads depositions for Adam Turnball. John Stockton, sixty-two years, speaks of a negro man Lucas let her have. . . .

[THE CHANCELLOR.] The evidence in this cause negatives any presumption of payment. The weight of it, in my mind, is against such presumption, and I think there is a stronger presumption against the payment than in favor of it.

The land has been constantly bought subject to this legacy. William Stidham, the administrator of Lucas, at the time he sold the land of Lucas by order of the Orphans' Court, set up this legacy to frighten purchasers, that he might obtain the land at an under price. It does not follow, though, that, because his motive was wrong, the allegation was unfounded. However, it did not rest on him alone. All the family seemed to consider the legacy to be unpaid, and so all the purchases were [on that basis.] I can come to no absolute certainty, but the weight of the testimony is in favor of the claim; the presumption is in favor of it, without any matter or thing to rebut it that cannot admit of some explanation, not perhaps satisfactory, but possible.

There must be a decree for complainant.